## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**CHRISTOPHER BRYAN SMITH**

**v.**                                    **Criminal No. 1:18cr8-HSO-JCG-1**
                                          **Civil No. 1:19cv130-HSO**

**UNITED STATES OF AMERICA**

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT CHRISTOPHER BRYAN SMITH'S MOTION [47] TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY PURSUANT TO 28 U.S.C. § 2255

BEFORE THE COURT is Defendant Christopher Bryan Smith's Motion [47] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255.  After due consideration of the Motion, the record, and relevant legal authority, the Court finds that Smith's Motion [47] should be denied without an evidentiary hearing.

### I. RELEVANT BACKGROUND

On January 24, 2018, a federal grand jury returned an indictment against Defendant Christopher Bryan Smith ("Mr. Smith" or "Defendant"), charging him with one count of possession of visual depictions of minors engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B).  *See* Indictment [3]. Defendant pleaded not guilty and James B. Halliday was appointed as counsel.  *See* Minute Entry, Feb. 7, 2018; Order [11].  On March 7, 2018, Mr. Halliday withdrew

from the case and Michael W. Crosby ("Mr. Crosby") was substituted as retained counsel. *See* Text Order, March 7, 2018; Notice [22].  Subsequently, Defendant filed a Notice of Intent to Change Plea [25] to plead guilty.  Defendant entered into a written Plea Agreement [26] with the Government and pled guilty to the one count Indictment [3] on May 1, 2018.  Minute Entry, May 1, 2018.  An Agreed Preliminary Order of Forfeiture was entered, pursuant to which Mr. Smith forfeited a 250 GB Western Digital Hard Drive Device (HDD), Model WDCWD2500BEVT-22A23T0, Serial # WD-EXE1A70J03914 and a Gateway Tower, Model Gateway GM5260, Serial # CLP69-710-02848.  *See* Am. Order [38].

The written Plea Agreement [26] and a Plea Supplement (Sealed) [27] (collectively, the "Plea Agreement") detailed both Defendant's obligations and those of the Government.  *See* Minute Entry, May 1, 2018.  The Plea Agreement, signed by Mr. Smith and his attorney, stated that Mr. Smith understood that the "plea agreement and the plea supplement completely reflects [sic] all promises, agreements and conditions made by and between the [Government] and Defendant."   Plea Agreement [26] at 6.

On August 16, 2018, Smith appeared before the Court for sentencing.  Minute Entry, Aug. 16, 2018.  The Defendant presented no objections to the Presentence Investigation Report ("PSR") or addenda.  Addendum to PSR [37-1] at 1; First Suppl. Addendum to PSR [37-2] at 1.  The Court sentenced Smith to one hundred nine (109) months imprisonment. Minute Entry, August 16, 2018; J. [40]. The Court further ordered Defendant to pay a $5,000.00 fine; $5,000.00 in restitution; a $5,000

assessment under the Justice for Victims of Trafficking Act (JVTA), 18 U.S.C. § 3014, and a $100.00 special assessment.  J. [40] at 6.  Upon release, Defendant was to be placed on a ten-year term of supervised release.  *Id.* at 3.  As a special condition of supervision, the Court prohibited defendant from "using any Internet-capable device, or computer, including computers at businesses, private homes, libraries, schools, or other public locations, unless granted advance permission by the supervising U.S. Probation Officer."  *Id.* at 6.  The Judgment of Conviction [40] was executed and filed on August 21, 2018. Neither Defendant nor his counsel filed a direct appeal of the Judgment within the time afforded by the Federal Rules of Appellate Procedure.

Proceeding pro se, Defendant filed the present Motion [47] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255, along with a Memorandum in Support [48], on March 11, 2019.  Def.'s Mot. [47]; *see* 28 U.S.C. § 2255(f).  Mr. Smith raises ineffective assistance of counsel claims against his trial counsel, Mr. Crosby, and challenges the constitutionality of his sentence.  *See* Def.'s Mot. [47].

Specifically, Mr. Smith advances several grounds upon which he claims his constitutional rights were violated.  *Id.*  First, he argues that he was denied the effective assistance of counsel in several ways because Mr. Crosby failed to: (1) object to the Presentence Report; (2) object during the sentencing hearing; (3) object during the Rule 11 hearing; and (4) argue for return of personal property (collectively "Ground One").  Mot. [47] at 4.  Defendant next asserts that his due

3

process rights were violated when the Court applied a five-level enhancement to his sentence for possessing more than 600 still images of child pornography ("Ground Two"). *Id.* at 5; Def. Mem. [48] at 5. Defendant's third ground for relief appears to be a partial reiteration of his first ground, in that he asserts that his counsel was ineffective by failing to argue for the return of Defendant's personal property. Def. Mot. [47] at 7. The Court will construe this as part of Ground One because it raises a claim of ineffective assistance of counsel. Finally, Mr. Smith contends that the Court's sentence violates his First Amendment rights because it imposes a special condition prohibiting his use of Internet capable devices ("Ground Three"). *Id.* at 8.

Mr. Crosby has filed an Affidavit in Opposition [52], refuting Mr. Smith's claims. Mr. Crosby avers that he did not provide ineffective assistance of counsel by failing to object to the enhancements Smith received at sentencing because they were applicable under the Sentencing Guidelines, and any objections would have been frivolous. Crosby Aff. [52] at 2-5. Mr. Crosby also states that the only property which the Government seized from Mr. Smith was a hard drive, which he agreed to forfeit. *Id.* at 6.

In its Response [53], the Government argues that Smith's Motion [47] should be denied because the five-level sentencing enhancement he received was proper, Resp. [53] at 7-10, and that Smith "agreed to forgo his right to collaterally attack his conviction and sentence" as part of his Plea Agreement, *Id.* at 5-7.[1]

---

[1] The Plea Agreement states that Defendant agrees to not contest "the conviction and sentence or the manner in which the sentence was imposed in any post-conviction proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255 . . . ." Plea Agreement [26] at 5.

Mr. Smith did not reply to the Government's Response [53], but sought leave to amend his Motion [47], which the Court granted.  Text Order, June 24, 2019.  In his Amended Motion [54], Mr. Smith raises two additional claims of ineffective assistance of counsel for failing to present evidence of Mr. Smith's psycho-sexual evaluation at sentencing, and for failing to object to the fine, restitution, and JVTA assessment imposed by the Court.  Am. Mot. [54].  In its Second Response [57], the Government maintains that the Court considered Mr. Smith's psycho-sexual evaluation during sentencing, Second Resp. [57] at 2, and that the fine, restitution, and assessment were not excessive, i*d.* at 3.  The Court will include these claims as part of Ground One.

## II. <u>DISCUSSION</u>

### A.   <u>Legal Standard</u>

Once finally convicted, there are four narrow and separate grounds upon which a federal prisoner may move to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255:  (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is "otherwise subject to collateral attack."  28 U.S.C. § 2255; *see also United States v. Cates*, 952 F.2d 149, 151 (5th Cir. 1992).  "[O]n collateral attack, a defendant is limited to alleging errors of a 'constitutional or jurisdictional magnitude.'"  *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (quoting *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991)).

Upon conviction and exhaustion of any right to appeal, courts are entitled to presume that a defendant stands fairly and finally convicted. *United States v. Frady*, 456 U.S. 152, 164 (1982); *Shaid*, 937 F.2d at 231-32.  Relief under § 2255 is therefore reserved for violations of constitutional rights and for a narrow range of injuries which could not have been raised on direct appeal and which, if condoned, would result in a complete miscarriage of justice.  *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992).

"The validity of a guilty plea is a question of law. . . ." *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000) (citing *United States v. Amaya*, 111 F.3d 386, 388 (5th Cir. 1997)). "A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citation omitted).  Therefore, "[a] guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently."  *Hernandez*, 234 F.3d at 255 (quoting *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000)). [2]

Whether a guilty plea was "knowing" turns on whether a defendant understood the direct consequences of the plea, including the maximum possible penalty, while "voluntariness" of a plea depends on whether the plea was induced by threats, misrepresentations, unfulfilled promises, or improper promises. *Id.* at 255 n.3. "[A] plea of guilty entered by one fully aware of the direct consequences of

---

[2] While Mr. Smith claims that his attorney was ineffective for failing to object during his Rule 11 hearing, his argument is cursory and does not assert that his guilty plea was not entered knowingly, intelligently, or voluntarily.  Def. Mem. [48] at 3.  Instead, he asserts that his attorney should have objected to the factual basis to which Mr. Smith pled guilty and which later supported the five-level sentencing enhancement assigned to him.  *Id.*

the plea is voluntary in a constitutional sense unless induced by threats, misrepresentation, or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." *Bousley*, 523 U.S. at 619 (quotation omitted).

Mr. Smith entered a plea of guilty to the Indictment on May 1, 2018, was sentenced on August 16, 2018, and did not appeal his conviction or sentence.  Upon conviction and exhaustion of his right to appeal, it is presumed that Mr. Smith now stands fairly and finally convicted.  *Samuels*, 59 F.3d at 528 (citation omitted).

B.   Mr. Smith's claims of ineffective assistance of counsel (Ground One)

The Sixth Amendment right to the assistance of counsel in defense of a criminal prosecution extends to the plea and sentencing process.  *Lafler v. Cooper*, 566 U.S. 156, 165 (2012); *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).  Claims of ineffective assistance of counsel are properly asserted through a motion to vacate pursuant to § 2255.  *United States v. Gaudet*, 81 F.3d 585, 589 n.5 (5th Cir. 1996) (citation omitted).   To succeed on a § 2255 motion asserting ineffective assistance, a defendant must demonstrate that his trial counsel's performance fell below an objective standard of reasonableness and that this deficient performance prejudiced his defense.  *Strickland v. Washington*, 466 U.S. 668, 690 (1984).  Failure to establish either prong defeats the claim.  *Green v. Johnson*,160 F.3d 1029, 1035 (5th Cir. 1998).   A court must presume that "counsel's conduct [fell] within the wide range of reasonable professional assistance," and a defendant is required to overcome that presumption. *Strickland*, 466 U.S. at 689.

7

In proving deficient performance, a petitioner must overcome the presumption that counsel's actions were sound trial strategy.  *Id.*  "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."  *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).  To demonstrate "prejudice" in the *Strickland* sense, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

1.   <u>Failure to object during guilty plea hearing</u>

Defendant first claims that counsel should have objected during the May 1, 2018, plea hearing to the Government's allegedly erroneous assertion in the factual basis that Defendant possessed 600 images of child pornography, which later supported the five-level enhancement that he received at sentencing.  Mot. [47] at 4; Def. Mem. [48] at 3.  He argues that "the record will demonstrate that [Defendant] was not responsible for the . . . offense conduct for 600 images of Child Pornography."  Def. Mem. [48] at 3.  Mr. Crosby states in his Affidavit that while Mr. Smith did not possess any still images of child pornography, he did possess forty-eight videos depicting child pornography.  Crosby Aff. [52] at 4.  Further, Mr. Crosby explained to Mr. Smith that, under the United States Sentencing Guidelines, videos are converted into still images at a rate of seventy-five images per video, which would make Mr. Smith responsible for 3,600 total images.  *Id.*; *see also* United States Sentencing Guidelines Manual § 2G2.2 cmt. n. 6(B)(ii) (U.S. Sentencing Comm'n 2018) (hereinafter U.S.S.G.).

8

At Defendant's plea hearing, the Government to read into the record the facts it would be prepared to show in the event the case had proceeded to trial, including that authorities found thirty-seven videos containing child pornography in Mr. Smith's possession.  After the Government recited its factual basis, the Court asked Mr. Smith if he heard what the Government was asserting that it could prove at trial and whether those facts were true and correct, and he admitted under oath that the Government's facts were correct.  Under § 2G2.2 cmt. n. 6(B)(ii) of the Guidelines, the thirty-seven videos which Smith admitted he possessed would convert to 2,755 still images, far in excess of the 600 images needed to support the enhancement.  He cannot establish that counsel was deficient for not objecting to facts to which he himself was given the opportunity to object.

Nor can Mr. Smith demonstrate prejudice.  At sentencing, the Court stated that, in the event it erred in calculating the Guidelines, it would have imposed the same sentence as a non-guideline sentence or variance based upon the offense conduct in this case and the nature and circumstances of the offense.  Smith has failed to establish either prong of a claim under *Strickland*.  *Clark*, 19 F.3d at 966.

2.    Failure to object to the Presentence Report

Defendant also claims that his attorney failed to object to the allegedly miscalculated Adjusted Base Offense Level in the PSR.  Mot. [47] at 3; Mem. [48] at 3.  Mr. Smith does not elaborate on how his Adjusted Base Offense Level was miscalculated and Mr. Crosby states that any objection would have been groundless because Mr. Smith's Adjusted Base Offense Level was correct.  Crosby Aff. [52] at 5.

While "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue," *Green*, 160 F.3d at 1042, "*[p]ro se* habeas corpus petitions must be construed liberally," *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989).  In substance, Mr. Smith's motion appears to focus on Mr. Crosby's alleged failure to object to the five-level enhancement assigned to Defendant for possessing over 600 images of child pornography.  As such, the Court will construe Mr. Smith's claim of ineffective assistance of counsel for failing to object to the PSR as a claim that Mr. Crosby should have objected to the five-level sentencing enhancement for possession of over 600 images.

As discussed *supra*, Mr. Smith admitted during his plea hearing that he possessed thirty-seven videos containing child pornography.  The PSR found that Mr. Smith possessed forty-eight videos.  PSR *SEALED* [37] at 11.  According to the PSR, the detective who initiated the investigation against Mr. Smith observed that he had received thirty-seven videos depicting child pornography.  *Id.* at 5.  However, a later-conducted forensic examination of Mr. Smith's computer revealed that he in fact possessed forty-eight videos containing child pornography, *id.* at 7, and the PSR used forty-eight videos when calculating the sentencing enhancement, *id.* at 11.

To the extent Mr. Smith is stating that his attorney was ineffective for failing to object to the discrepancy between the number of videos that Mr. Smith admitted to possessing at the plea hearing and the number of videos attributed to him in the

10

PSR, Smith cannot show prejudice.  The Sentencing Guidelines state that each video depicting child pornography shall be considered to have seventy-five still images for purposes of determining the applicability of a sentencing enhancement.  U.S.S.G. § 2G2.2 cmt. n. 6(B)(ii).  If the offense involved 600 or more images, then a five-level enhancement applies.  U.S.S.G. § 2G2.2(b)(7).  The PSR applied a five-level enhancement because Mr. Smith possessed forty-eight videos, or 3,600 images.  PSR *SEALED* [37] at 11.  Even if the PSR had only used the thirty-seven videos which Mr. Smith admitted possessing at his plea hearing, the five-level enhancement would still have been appropriate because the Guidelines convert thirty-seven videos to 2,775 images, still far above the 600 images required to support the five-level enhancement.  Therefore, any objection by counsel to the offense level calculation in the PSR would have lacked merit.  This is insufficient to support an ineffective assistance of counsel claim under either prong of *Strickland*. *Clark*, 19 F.3d at 966.

3.   Failure to object during the sentencing hearing

Mr. Smith next argues that his attorney was ineffective when he failed to object during the sentencing hearing "that the 600 still images were not applicable to the [Defendant] under the relevant conduct guidelines of U.S.S.G. § 1B1.3." Def. Mem. [48] at 4.  U.S.S.G. § 1.B1.3 states that "all acts and omissions committed . . . by the defendant" determine the specific offense characteristics which apply to his conduct.  U.S.S.G. § 1B1.3(a) – (a)(1)(A).  In this case, Mr. Smith was given a five-level sentencing enhancement as a specific offense characteristic for possessing over

600 images of child pornography.  PSR *SEALED* [37] at 12.  Thus, it appears that Defendant is reiterating his argument that Mr. Crosby should have objected to the offense level calculation in the PSR.  The Court has already addressed this claim and rejected it.

4.   Failure to argue for the return of personal property

Defendant twice argues in his Motion [47] that he was denied effective assistance of counsel because Mr. Crosby failed to request the return of his personal property.  Mot. [47] at 4, 7; Def. Mem. [48] at 4, 7-8.  According to Mr. Smith, federal agents seized his wallet, driver's license, credit cards, Social Security card, cell phone, and insulin pump, which he alleges are worth a total of $11,000.00.  Def. Mem. [48] at 7-8.  Defendant maintains that this property was not connected to the crime for which he was convicted and thus should not have been seized.  *Id.*

Mr. Crosby agrees that the foregoing property was not connected to the offense but claims that he did not argue for its return because the Government denied seizing it.  Crosby Aff. [52] at 6.  Indeed, the inventory log submitted by the Government, which lists the property seized from Mr. Smith's residence pursuant to a search warrant, does not list any of the items which Mr. Smith claims were taken. Gov. Ex. A [53-1].  However, even if the Government did take this property, Mr. Smith has not demonstrated that he was prejudiced by Mr. Crosby's decision to not request its return.

To demonstrate "prejudice" under *Strickland*, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different." *Clark*, 19 F.3d 959 at 694.  The

forfeiture of Mr. Smith's personal property was not part of his sentence.  *See* J. [40];

Am. Order [38].  Therefore, whether Mr. Crosby had argued for its return would not

have affected the conviction or the sentence the Court imposed.  As such, Mr.

Smith's ineffective assistance of counsel claim fails.

5.     Failure to perfect the record for appellate review

        Mr. Smith next claims that his attorney was ineffective for failing to perfect

the record for an appellate review of his sentence.  Def. Mem. [48] at 4.  Mr. Smith

does not explain how Mr. Crosby failed to perfect the record and only passingly cites

a United States Supreme Court case to support of his argument.  *Id.* (citing *United

States v. Booker*, 543 U.S. 220 (2005)).  While the Court need not entertain his

conclusory statements in this regard, *Green*, 160 F.3d at 1042, it finds that Mr.

Smith's claim fails on the merits because he cannot show prejudice.  Mr. Smith did

not attempt to appeal his sentence in this case.  Therefore, he cannot demonstrate

that his appellate process was prejudiced by Mr. Crosby's alleged failure to perfect

the record for appellate review.

6.     Failure to introduce evidence of pyscho-sexual evaluation

        In his Amended Motion [54], Defendant claims that his attorney was

ineffective at sentencing for failing to introduce evidence contained in the pyscho-

sexual evaluation in support of a lesser sentence.  Am. Mot. [54] at 1.  According to

Mr. Smith, the results of his court-ordered evaluation were those similar "to a class

of offenders in a generally lower sentencing class," and, as such, he was prejudiced

by Mr. Crosby's failure to argue for a downward departure from the applicable Sentencing Guidelines range. *Id.* at 1-2. While Mr. Smith asserts that he received a longer sentence than similarly situated offenders, he has not presented any evidence to support this claim. *Id.* at 2. The Government counters that Mr. Smith cannot show prejudice because the Court took his psycho-sexual evaluation into consideration when it imposed his sentence. Second Resp. [57] at 2.

Defendant has not shown that his trial attorney rendered ineffective assistance because the psycho-sexual evaluation was already part of the record and was reviewed by the Court prior to sentencing. Before Mr. Smith's sentencing, the Court ordered that the evaluation be performed and that copies of the report be forwarded to both parties, to the Probation Office, and to the Court. Text Order, June 6, 2018. The Court later read the evaluation and considered the evaluator's recommendations in reaching its decision to impose a ten-year term of supervised release. To be clear, Mr. Smith is not arguing that Mr. Crosby should have introduced new mitigating evidence at his sentencing hearing; rather, he contends that Mr. Crosby did not use the evidence already in the record to Mr. Smith's liking. Such a claim does not overcome the presumption that Mr. Crosby's actions were sound trial strategy. *Strickland*, 466 U.S. at 689. As such, Mr. Smith has not demonstrated that Mr. Crosby rendered deficient performance when he did not further highlight evidence which the Court had already considered.

Even if Mr. Smith could satisfy the first prong of *Strickland*, he cannot show that he would have received a lesser sentence but for Mr. Crosby's conduct. When

reaching the sentence it imposed, the Court considered the results of Defendant's psycho-sexual evaluation. Further, the sentence fell within the lower fifty percent of the Guidelines range of 97 – 121 months imprisonment, and was well below the statutory maximum sentence of twenty years imprisonment. PSR *SEALED* [37] at 18. Mr. Smith's argument that he would have received an even lesser sentence had his attorney argued that he was unlikely to reoffend or commit a sex crime with a physically present victim is speculative at best. Thus, this claim for ineffective assistance of counsel fails.

7.   Failure to object to the fine, restitution, and JVTA assessment

Finally, Mr. Smith's Amended Motion claims that counsel was ineffective in failing to object to the $5,000.00 fine, $5,000.00 restitution, and $5,000.00 JVTA assessment. Am. Mot. [54] at 2. Mr. Smith argues that Mr. Crosby should have objected to these fees because they were excessive and not supported by evidence. He asserts that the Court did not "rely on any principled method of determining the harm" caused by his offense. *Id.* Mr. Smith's conclusory claims do not elaborate on what difference any objection would have made beyond his subjective belief that "the outcome of the proceeding would have been different" had his attorney objected. *Id.* at 3. The Court is of the opinion that Defendant cannot show that Mr. Crosby's decision not to object was unreasonable because the fine, restitution, and JVTA assessment imposed were appropriate and supported by the record.

Mr. Smith's offense was subject to a mandatory special assessment of $5,000.00 under Justice for Victims of Trafficking Act. *See* 18 U.S.C. § 3014 (2018).

While 18 U.S.C. § 3014(a) exempts indigent defendants from the assessment, Defendant does not claim that he is indigent.  Additionally, Defendant cannot argue that he is destitute as he retained private counsel for his case.  Any objection to this statutorily mandated assessment would have lacked merit and cannot serve as a basis for an ineffective assistance of counsel claim.  *Clark*, 19 F.3d at 966.

In addition, 18 U.S.C. § 2259 requires the Court to order restitution for any victims whose losses were proximately caused by an offense under Chapter 110.  18 U.S.C. § 2259; *see also Paroline v. United States*, 572 U.S. 434, 443 (2014).  While multiple victims sought restitution in this case, the Court only ordered restitution in the amount of $5,000.00 to a single victim, "Pia," because she was the only one for whom the Court received sufficient evidence of loss.[3]  *See* PSR Supp. Addendum *SEALED* [37-2] at 1-2.  After reviewing Pia's restitution request, the Court found that Defendant was the proximate cause of the damages which she incurred and that $5,000.00 was an appropriate amount of restitution in light of her total losses and the restitution she had already recovered from other criminal defendants.  *See Paroline* 572 U.S. at 448 (requiring courts to find that a defendant proximately caused victim's losses before ordering restitution under 18 U.S.C. § 2259).

Lastly, the Sentencing Guidelines recommended that the Court assess a fine in the range of $25,000.00 to $250,000.00.  U.S.S.G. § 5E1.2(c)(3).  However, after

---

[3] Specifically, the victim's representative submitted evidence of a forensic evaluation which estimated the total costs for family and individual therapy, transportation, and academic and vocational training to be $91,000.00.  PSR Supp. Addendum *SEALED* [37-2] at 2.  The representative also anticipated between $10,000.00 and $15,000.00 of additional expenditures for periodic updates and vocational evaluations to document the losses the victim is likely to suffer as a result of the ongoing circulation of her images.

evaluating his ability to pay a fine, the Court ordered Mr. Smith to pay a $5,000.00 fine, a significant downward departure from the Guidelines range. *United States v. Brantley*, 537 F.3d 347, 351-52 (5th Cir. 2008) ("If the district court adopts the PSR but 'chooses to disregard [the PSR's recommendation on fines], it must make specific findings regarding the defendant's ability to pay a fine.'") (quoting *United States v. Landerman*, 167 F.3d 895, 899 (5th Cir. 1999)) (alteration in original).  The Court further found that Mr. Smith did not have the ability to pay interest and waived that requirement for both the fine and the restitution.  Considering that Mr. Smith was ordered to pay a dramatically lower fine than what the Sentencing Guidelines recommended, it is highly unlikely that any objection by Mr. Crosby to the amount would have resulted in a lower fine.

In sum, because the Court was mandated to order the JVTA assessment and restitution and because it took into account Mr. Smith's ability to pay a fine, counsel's performance did not fall below an objective standard of reasonableness, nor can Mr. Smith show prejudice.  As such, Smith cannot demonstrate that he was denied the effective assistance of counsel on this ground.

C.   Smith's due process claims (Ground Two)

As his second ground for relief, Defendant asserts that the PSR violated his due process rights[4] when it erroneously applied the five-level sentencing

---

[4] Defendant asserts that he was denied due process under the Fifth and Sixth Amendments to the United States Constitution. Mot. [47] at 5; Def. Mem [48] at 4.  However, the Sixth Amendment does not contain a due process clause. *See* U.S. Const. amend. VI.  To the extent Defendant is arguing that his Sixth Amendment right to assistance of counsel was violated, the Court has already addressed this claim.

enhancement.  Mot. [47] at 5; Def. Mem. [48] at 4-6.  Mr. Smith claims that it was plain error for the Court to impose a five-level enhancement based upon the finding that he possessed over 600 images of child pornography.  The Court has already addressed this contention.  In addition, a § 2255 motion is not the proper vehicle through which to challenge the Court's application of the Sentencing Guidelines.

"Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal . . . [m]isapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions." *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999); *see also Cuevas v. United States*, No. 1:16cv296, 2017 WL 3623747, at *2 (S.D. Miss. Aug. 23, 2017) ("Claims of misapplication of the guidelines are not cognizable under § 2255."); *United States v. Hernandez*, No. 1:06cv180, 2007 WL 912126, at *2 (S.D. Miss. March 23, 2007) ("It is well settled that . . . claims based on alleged miscalculation or misapplication of the sentencing guidelines are not cognizable under 28 U.S.C. § 2255.").

Nevertheless, the Court has reviewed Mr. Smith's sentencing enhancement and determined that it was properly calculated under the Sentencing Guidelines, *see supra* Section II.B.2, and even if the Court erred in calculating the Guidelines, it found at sentencing that it would have imposed the same sentence as a non-guideline sentence or variance based upon the offense conduct in this case and the nature and circumstances of the offense.  Finally, Mr. Smith waived the right to contest his sentence "in any post-conviction proceeding, including but not limited to

a motion brought under Title 28, United States Code, Section 2255," when he entered into the Plea Agreement with the Government.  Plea Agreement [26] at 5. As such, he has waived this claim.  For all of these reasons, Mr. Smith's due process challenge to his sentence fails.

D.    Smith's First Amendment claims (Ground Three)

Defendant next argues that his sentence violates his First Amendment rights because the Court imposed a special condition of supervised release prohibiting him from using Internet-capable devices without prior authorization.  Mot. [47] at 4; Def. Mem. [48] at 9-11.  Mr. Smith argues that "[t]here is nothing in the record indicating that this special condition is related to an identified sentencing goal," and that prohibiting his Internet use is "a greater deprivation of liberty than is reasonable [sic] necessary to achieve sentencing goals."  Def. Mem. [48] at 10.

As the Fifth Circuit has explained:

A district court has wide, but not unfettered, discretion in imposing terms and conditions of supervised release.  A district court's discretion is curtailed by statute in two ways.  First, the condition of supervised release must be "reasonably related" to one of four statutory factors: (1) the nature and characteristics of the offense and the history and characteristics of the defendant; (2) the need for deterrence of criminal conduct; (3) the need to protect the public from further crimes of the defendant; and (4) the need to provide the defendant with vocational training, medical care or other correctional treatment.  Second, the condition must be narrowly tailored such that it does not involve a greater deprivation of liberty than is reasonably necessary to fulfill the purposes set forth in 18 U.S.C. § 3553(a).

*United States v. Duke*, 788 F.3d 392, 398 (5th Cir. 2015) (internal citations omitted).

The Court imposed the special condition prohibiting Defendant's Internet use because of his documented pornography addiction and because the underlying

19

offense involved the use of computers.  The Court's stated goal in imposing the condition was also to assist Mr. Smith in rehabilitating and dealing with his addiction, to prevent him from recidivating, and to give the probation office the tools to ensure that Mr. Smith does not recidivate.  Finally, the special condition serves to protect the public to the extent that remains necessary once Defendant is released from incarceration.  As such, the special condition restricting Defendant's Internet use was reasonably related to the sentencing goals in this case.

The Court's special condition is narrowly tailored and does not involve a greater deprivation of liberty than is reasonably necessary to achieve sentencing goals.  Mr. Smith asserts that prohibiting his Internet use while on supervised release unreasonably deprives him of his First Amendment right to exchange ideas. Def. Mem. [48] at 10-11.  While Mr. Smith correctly points out that the Supreme Court has identified cyberspace as an important forum through which individuals can exercise their First Amendment rights, *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017), the special condition limiting his Internet use while on supervised release does not unduly burden this right because it is neither a lifetime nor an absolute ban.  *United States v. Miller*, 665 F.3d 114, 133 (5th Cir. 2011).

The Fifth Circuit has held that restricting a convicted child pornographer's Internet use while on supervised release was "a reasonable means of balancing [the defendant's] rights and the goal of protecting minors . . . ." *Miller*, 665 F.3d at 133. In that case the Fifth Circuit found that limiting the defendant's Internet use during his twenty-five years of supervised release was not an unreasonable

deprivation of his liberty. *Id.* at 127, 133. The court focused on the trial court's decision to have the Probation Office control the defendant's Internet usage because it "permit[s] flexibility by allowing the probation officer to consider all the circumstances, including Miller's needs for computer and Internet access and alternatives that may exist in the future for supervising that access." *Id.* at 133. It was also sufficient that the *Miller* defendant's Internet restriction was only for the duration of his twenty-five-year term of supervised release, as opposed to a lifetime ban. *Id.* at 127; *cf. Duke*, 788 F.3d at 401 (holding that trial court abused its discretion by imposing an absolute, lifetime ban on defendant's Internet and computer use).

Like the defendant in *Miller*, Mr. Smith was given a special condition limiting his Internet access while on supervised release subject to the prior approval of the United States Probation Office. Mr. Smith's Internet use will be controlled for ten years rather than for the rest of his life, and the Court did not absolutely ban Mr. Smith's Internet access, but gave the Probation Office the power to authorize his computer use. As such, the Court finds that the special condition limiting Mr. Smith's computer use and Internet access is narrowly tailored and does not unreasonably deprive him of his First Amendment rights.

## III. CONCLUSION

Because the Motion, files, and records conclusively show that Defendant is entitled to no relief, the Court finds that Mr. Smith's Motion [47] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28

U.S.C. § 2255, should be denied without an evidentiary hearing.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant

Christopher Bryan Smith's Motion [47] to Vacate, Set Aside, or Correct Sentence by

a Person in Federal Custody, filed pursuant to § 2255, is **DENIED**.

**SO ORDERED AND ADJUDGED**, this the 21st day of April, 2020.

_s/ Halil Suleyman Ozerden_
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE